**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD., | Civil Action No. 6:21-cv-453 |
| *Plaintiff*, | |
| v. | |
| WENGER S.A., | Jury Trial Demanded |
| *Defendant*. | |

## DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

**Page(s)**

I.    THE ASSERTED CLAIMS AND ASSERTED PATENTS ............................................ 1

II.   INTRODUCTION AND BACKGROUND ................................................................... 1

III.  LEGAL STANDARD ................................................................................................. 2

    A.    Claim Construction ........................................................................................ 2

    B.    Lack of Written Description Under § 112 ...................................................... 3

IV.   ARGUMENT .............................................................................................................. 4

    A.    "Retained Outside" ........................................................................................ 4

    B.    "Adjacent To" ................................................................................................ 6

    C.    "In Communication With" .............................................................................. 7

    D.    "Covers" ......................................................................................................... 8

    E.    "Exposed" ...................................................................................................... 9

    F.    "Fixedly Attached" ...................................................................................... 12

    G.    "At The Body Opening" .............................................................................. 13

    H.    "Retained In" ............................................................................................... 15

V.    CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Steel Corp. v. Sollac*,
344 F.3d 1234 (Fed. Cir. 2003)...................................................................... *passim*

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc)...............................................3, 4, 14, 16

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004)...............................................................................3, 6

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012)................................................................................14

*Nautilus Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)..........................................................................6, 9, 14, 15

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)......................................................................2, 3, 6

*In re Rasmussen*,
650 F.2d 1212 (CCPA 1981)................................................................................17

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015)..............................................................................................2

*In re Tropp*,
748 Fed. Appx. 1022 (Fed. Cir. Dec. 12, 2018)....................................................4

*Vasudevan Software v. MicroStrategy, Inc.*,
782 F.3d 671 (Fed. Cir. 2015)......................................................................3, 4, 14, 16

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996).................................................................................2

*Waldemar Link v. Osteonics Corp.*,
32 F.3d 556 (Fed. Cir. 1994)...........................................................................3, 16

**Statutes**

35 U.S.C. § 112(a)..................................................................................................3

35 U.S.C. § 112(b)........................................................................................ *passim*

Pursuant to the Court's Scheduling Order entered on December 10, 2021 (Dkt. 22), Defendant Wenger S.A. ("Wenger") hereby fprovides its Opening Claim Construction Brief.

## I.   THE ASSERTED CLAIMS AND ASSERTED PATENTS

The following claims of the following patents are asserted in the present case:

| Asserted Patent | Asserted Claim(s) |
|---|---|
| U.S. Patent No. 10,572,071 | 1, 6, 9, 10, 17 |
| U.S. Patent No. 10,931,138 | 23 |

## II.   INTRODUCTION AND BACKGROUND

SwissDigital accuses Wenger of infringing two patents related to luggage with USB charging connectors.  *See* Amended Complaint (Dkt. 20).  The first, U.S. Patent No. 10,574,071 ("the '071 Patent"), is titled "Bag or Luggage with USB Charging Connector," and was filed on August 26, 2015.  *See* Dkt. 20-1 ("'071 Patent").  The second, U.S. Patent No. 10,931,138 ("the '138 Patent"), is titled "Sheath for USB Charger," and was filed on April 2, 2020.  The '138 Patent is a continuation-in-part of a continuation of the application that led to the '071 Patent.  *See* Dkt. 20-2 ("'138 Patent").

The application that led to the '071 Patent, Appl. No. 14/836,104 ("the 104 Application"), was filed on August 26, 2015.  As issued, the '071 Patent recites "[a] bag or luggage for convenient charging" which has "a placing space for placing a power storage device inside the bag or luggage body and a power cable outlet on the outer surface of the bag or luggage body," where "the female connector [of a USB cable] is retained outside . . . [and] in communication with" the bag, and is covered by a sheath which "does not cover the operative end of the female connector."  *See* '071 Patent at Claim 1.

A continuation of the 104 Application ("the Child Application") was filed on April 19, 2019.  Subsequently, on April 2, 2020, a continuation-in-part of that Child Application was filed that eventually resulted in the '138 Patent.  When filed, that continuation-in-part added seventeen pages of new matter.  As issued, the '138 Patent recites "[a] sheath for convenient charging" which has "a raised portion that extends above an outer surface of a body" and "a surrounding bottom portion," "wherein the sheath is at the body opening" and "the operative end of the female end of the USB cable is retained in the USB opening to provide the female end of the U[SB][1] cable in a flat position."  '138 Patent at Claim 23.

## III.   LEGAL STANDARD

### A.  Claim Construction

Claim construction is a question of law, although subsidiary fact finding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-38 (2015).  Claim terms are given their "ordinary and customary meaning" to a person skilled in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  Even "readily apparent" claim terms must be read "in the context of the entire patent, including the specification."  *Id.* at 1312-13.  The specification "is the single best guide to the meaning of a disputed term."  *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  If the specification defines or gives consistent meaning to certain terms, "the inventor's lexicography governs."  *Id*.  If the specification merely provides examples or preferred embodiments of an invention, however, it is improper to limit the claims to those embodiments.  *Phillips*, 415 F.3d at 1323.  Like the claim language and the specification, the prosecution history, while less reliable

---

[1] Claim 23 of the '138 Patent consistently recites a "USB opening" and a "USB cable," and in one instance cites a "UBS cable."  *See* '138 Patent at Claim 23.  Wenger understands this to be a typographical error, and refers to a "USB cable" throughout its claim construction briefing.

than the specification, is also intrinsic evidence of the claim term's meaning and "provides evidence of how the PTO and the inventor understood the patent." *Id.* at 1317.

The Court may also consider extrinsic evidence, including expert and inventor testimony, dictionaries, and learned treatises. *Id.* (*quoting Markman*, 52 F.3d at 980). Extrinsic evidence "is less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Id.* (quoting C.*R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).

### B.    Lack of Written Description Under § 112

Section 112 of the Patent Act requires that "[t]he specification shall contain a written description of the invention, and of the process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention." 35 U.S.C. § 112(a). "The test for the sufficiency of the written description 'is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Vasudevan Software v. MicroStrategy, Inc.*, 782 F.3d 671, 682 (Fed. Cir. 2015) (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).

Because the '138 Patent is a continuation-in-part of previous applications, with seventeen pages of new matter added, the claims of the patent may have different priority dates—either the priority date of the original parent application, or the priority date of the continuation-in-part application. *See Waldemar Link v. Osteonics Corp.*, 32 F.3d 556, 558 (Fed. Cir. 1994) ("A CIP application can be entitled to different priority dates for different claims. Claims containing any matter introduced in the CIP are accorded the filing date of the CIP application. However, matter

3

disclosed in the parent application is entitled to the benefit of the filing date of the parent application.").   The adequacy of the written description is determined as of the filing date of the patent.  *Vasudevan*, 782 F.3d at 682 (citing *Ariad*, 598 F.3d at 1351).   Therefore, the adequacy of the written description of a particular claim may depend on whether it is afforded the filing date of the parent application or the continuation-in-part application; that is, a claim may have adequate written description in the new matter added during prosecution, but not have adequate written description from the parent application.  *See, e.g., In re Tropp*, 748 Fed. Appx. 1022, 1024 (Fed. Cir. Dec. 12, 2018) (citation omitted) (new matter introduced in a continuation-in-part can be "relevant to assessing compliance with the written description requirement").

## IV.   ARGUMENT

### A.   "Retained Outside"

| Claim Term, Clause, or Phrase | U.S. 10,572,071 Claim(s) | U.S. 10,931,138 Claim(s) | Proposed Construction |
|---|---|---|---|
| "retained outside" | 1, 10 | | § 112—Indefinite<br>Alternatively, retained entirely outside of. |

As issued, claims 1 and 10 of the '071 Patent recite that "the female connector [of the USB extension cable] is **retained outside** and adjacent to the power cable outlet with one side of the four sides of the female connector in communication with the bag or luggage body."  *See* '071 Patent at Claims 1, 10.  But it is unclear what it means to be "retained outside . . . [of] the power cable outlet," and therefore this does not "particularly point[] out and distinctly claim[] the subject matter" of the invention.  *See* 35 U.S.C. § 112(b).  The specification of the '071 Patent repeatedly insists that "the female connector 2-2 is exposed outside the power cable outlet."  *See, e.g.,* '071 Patent at 3:22-23, 3:54-55, 4:43-44, 4:54-55, 5:19-20; *see also id.* at 5:7-9.  However, the specification does not explain or distinguish what it means to be "*retained* outside" the power

cable outlet, and/or how relates to being "exposed outside" the power cable outlet.

Alternatively, "retained outside" should be construed to mean "retained entirely outside of."  As originally filed, claim 1 of the '071 Patent recited "the female connector is in the power cable outlet or exposed outside the power cable outlet . . .."  *See* Exh. A at 14/836,104 Application at 9 (File History at 591).  The Examiner rejected the claims, noting:

> The USB connector 218 shown in Fig. 21 is *next to* the aperture 210 (equated to be the recited power cable outlet).  Therefore the USB connector 218 is adjacent to the aperture 210.  Examiner also notes that any limitations recited in the alternative form (i.e. using OR) and not explicitly itemized in the action is not given any patentable weight.

*See id.* at 02/08/2019 Office Action at 9 (File History at 244).

In an Amendment, Applicant amended the claim as follows: " . . . wherein the female connector is retained ~~in the power cable outlet or exposed~~ outside and adjacent to the power cable outlet . . .."  *See id.* at 04/08/2019 Response at 3 (File History at 221).  Accordingly, the removal of the phrase "in the power cable outlet or exposed" narrowed this element to require that the female connector be *entirely* outside the power cable outlet.

This is further supported by the Applicant's remarks to the Patent Office in the same Response.  In making the Amendment, the Applicant noted that "the female connector 2-2 is in a flat position on the outer surface of the bag or luggage and covered by the sheath with the operative end of the female connector uncovered, so that an external USB connecting line (12) can be easily attached and detached to the female connector 2-2 without having to open the bag."  *Id.* at 9.  The specification of the '071 Patent further confirms that "advantages" of the invention include "a bag or luggage for convenient charging, which enables a user to charge a product needing to be charged conveniently at any time or any place during travelling, without necessarily opening the bag or luggage, nor taking out the power source for charging."  '071 Patent at 2:25-31.  In order to provide

this benefit of use, the female connector of the USB cable must be retained entirely outside of the power cable outlet, so as to prevent a user from having to open or fiddle with the bag in order to plug his/her device into the cable.  *See AK Steel*, 344 F.3d at 1239-40 (claims should be interpreted consistent with stated purposes and goals of the invention).

B.    **"Adjacent To"**

| Claim Term, Clause, or Phrase | U.S. 10,572,071 Claim(s) | U.S. 10,931,138 Claim(s) | Proposed Construction |
|---|---|---|---|
| "adjacent to" | 1, 10 | | § 112—Indefinite<br>Alternatively, adjoining. |

The independent claims of the '071 Patent recite that "the female connector is . . . adjacent to the power cable outlet."  *See* '071 Patent at Claims 1, 10.  But it is unclear what it means to be "adjacent to the power cable outlet," which is a term of degree and therefore this does not "*particularly* point[] out and distinctly claim[] the subject matter" of the invention (*see* 35 U.S.C. § 112(b)), nor does it "inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus*, 572 U.S. at 910.

Alternatively, "adjacent to" should be construed as "adjoining."  During prosecution of the '071 Patent, Applicant distinguished the prior art by arguing that the aperture of prior art reference Ferber was "the opposite of adjacent, [instead] being remotely located from connector."  *See* Exh. A at 06/25/2019 Amendment at 6 (File History at 134).  In so distinguishing, the Applicant cited an online dictionary,[2] citing that "Dictionary.com provides 'lying near, close, or contiguous:

---

[2] Because the online dictionary was cited by Applicant in the prosecution history, it in intrinsic evidence, and carries more weight than a dictionary cited as extrinsic evidence.  *See, e.g., Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard*, 388 F.3d at 862) (extrinsic evidence is "less significant that then intrinsic record," which includes the prosecution history, "in determining the legally operative meaning of claim language).

adjoining; neighboring" (https://www.dictionary.com/browse/adjacent?s=t accessed June 7, 2019)." *Id.*

C.    **"In Communication With"**

| Claim Term, Clause, or Phrase | U.S. 10,572,071 Claim(s) | U.S. 10,931,138 Claim(s) | Proposed Construction |
|---|---|---|---|
| "in communication with" | 1, 10 | 23 | attached to. |

As a preliminary matter, the '071 Patent specification **does not** describe or define "in communication with."   *See generally* '071 Patent. However, the figures in both patents show figures where the relevant portion of the bag (the "body") is attached to the one side of the female connector (in the '071 Patent) or the sheath (the '138 Patent).   For example:



'071 Patent at Figures 3, 4, 8; *see also* '138 Patent at Figures 3, 4, 8.

Accordingly, both patents show that the "body" of the bag is *attached to* the relevant component.  This is because the goal of the patents is to provide "a bag or luggage for convenient charging, which enables a user to charge a product needing to be charged conveniently at any time

or any place during traveling, without necessarily opening the bag or luggage, nor taking out the power source for charging."  *See* '071 Patent at 2:25-31; *see also* '138 Patent at 2:17-22.  The purpose of the invention would be frustrated if the body of the bag were not attached to the relevant component; indeed, if the body of the bag were not connected to the relevant component, a user would not be able to accomplish the intended purpose of being able to charge a device without opening the bag.  *See AK Steel*, 344 F.3d at 1239-40.

This construction is confirmed for the '138 Patent by new matter added to it.  The '138 Patent *does* describe "in communication with" in discussion several times, referencing "a piece of fabric (1500) in communication with the inner surface of the body" (*see* '138 Patent at 6:11-15); "that the piece of fabric is a reinforced piece of fabric which may be a rigid cover (2000) in communication with the inner surface of the body" (*see id.* at 6:19-23); and that "[t]he surrounding bottom portion (5300) may be in communication with the outer surface (5302) of the body."  *Id.* at 7:41-42.  Accordingly, Wenger respectfully requests that the Court construe "in communication with" as "attached to."

    **D.**    **"Covers"**

| Claim Term, Clause, or Phrase | U.S. 10,572,071 Claim(s) | U.S. 10,931,138 Claim(s) | Proposed Construction |
|---|---|---|---|
| "covers" | 1, 10 | | § 112—Indefinite<br>Alternatively, overlapping; on top of. |

The independent claims of the '071 Patent recite that "the sheath is above and covers the power cable outlet."  *See* '071 Patent at Claims 1, 10.  But it is unclear what it means to "cover[] the power cable outlet," as cover is a term of degree and therefore this does not "*particularly* point[] out and distinctly claim[] the subject matter" of the invention (*see* 35 U.S.C. § 112(b)), nor does it "inform those skilled in the art about the scope of the invention with reasonable certainty."

8

*Nautilus*, 572 U.S. at 910.

Alternatively, "covers" should be construed to me "overlapping; on top of." The claims of the '071 Patent recite that "the sheath is above and covers the power cable outlet." *See* '071 Patent at Claims 1, 10.  In order satisfy the recited configuration—that is, to be above and to cover, simultaneously—the sheath must be overlapping and/or or top of the power cable outlet.  This is further confirmed by the figures showing how the "above and covers" configuration is achieved:

FIGURE 10



*Id.* at Figure 10; *see also id.* at Figures 3, 4, 8 (reproduced *supra*).  This configuration is further confirmed when the claims go on to recite, not even a full line later, that "the sheath does not cover the operative end of the female connector which is exposed . . . ."  *See id.*

E.      "Exposed"

| Claim Term, Clause, or Phrase | U.S. 10,572,071 Claim(s) | U.S. 10,931,138 Claim(s) | Proposed Construction |
|---|---|---|---|
| "exposed" | 1, 10 | | not fully covered |

9

The asserted claims of the '071 Patent recite that "the sheath does not cover the operative end of the female connector which is exposed . . . such that the operative end of the female connector does not need to be moved and the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged."  *See* '071 Patent at Claims 1, 10. Accordingly, the female connector of the USB is "exposed" to accomplish the goal of the patent, which is to provide "a bag or luggage for convenient charging, which enables a user to charge a product needing to be charged conveniently at any time or any place during traveling, without necessarily opening the bag or luggage, nor taking out the power source for charging."  *See* '071 Patent at 2:25-31.  This purpose could not be accomplished unless the female connector of the USB was not fully covered.  *See AK Steel*, 344 F.3d at 1239-40.

That exposed means not fully covered is confirmed by the figures of the patent, which show that the female connector (2-2) is not fully covered by the sheath (3); rather, the female-connector 2-2 is covered on the sides by the sheath 3, but sufficiently uncovered on the "plug" end of the female connector 2-2 to permit a USB cable and/or a dust cap to be plugged into it, without adjusting the sheath:



FIGURE 1

*Id.* at Figure 1 (annotated).



FIGURE 2

*Id.* at Figure 2 (annotated).

F.      "Fixedly Attached"

| Claim Term, Clause, or Phrase | U.S. 10,572,071 Claim(s) | U.S. 10,931,138 Claim(s) | Proposed Construction |
|---|---|---|---|
| "fixedly attached" | 1, 10 | | connected to the bag or luggage permanently. |

The independent claims of the '071 Patent recites that "the female connector . . . [is] **fixedly attached** above the exterior of the bag such that the operative end of the female connector does not need to be moved and the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged." '071 Patent at 1, 10 (emphasis added). The phrase "fixedly attached" appears in both asserted independent claims, but nowhere else in the specification. The claims recite that "the female connector . . . is exposed and fixedly attached above the exterior of the bag such that the operative end of the female connector does not need to be moved and the bag or luggage body does not need to be opened to accept a charging interface . . .." '071 Patent at Claims 1, 10.

This language was added during prosecution, in order to overcome a rejection over Ferber. Applicant argued:

> The sheath of the present invention secures the operative end of the female connector which is exposed and fixedly attached above the exterior of the bag such that the operative end of the female connector does not need to be moved and the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged. In Ferber, the connector 216 is retained when not being used and is pulled out of the pocket 42 to be used. Ferber expressly provides, "The compartments 212 may each have a connector pocket 224 sized to receive the connectors 216 when not connected to an electronic device, allowing the connectors 216 to be easily located by a user within the compartment 212." Ferber [0066]. Ferber additionally provides, "The connector 40 fits inside the pocket 42 and may be placed there when it is not connected to a mobile device. The pocket 42 allows the connector 40 to be stored and easily located by the user within the compartment 36." Ferber

12

[0040].  Because of this, there must be some length of cord that may be pulled in and out.  This is one of the very problems south [*sic*] to be addressed by the current invention.  As will be addressed below, applicant proposed additionally amending the claim to positively recite "the female connector <u>which is exposed and fixedly attached above the exterior of the bag.</u>"  See also [003].  The present invention intends to overcome the disadvantages stated above, and provides a type of bag or luggage for convenient charging, which enables the user to charge a device or product needing to be charged conveniently at any time or any place during traveling, without necessarily opening the bag or luggage, nor taking out the power source for charging.

Exh. A at 06/25/2019 Amendment & Response at 7-8 (File History at 136).

Accordingly, in order to accomplish the "very problems sou[ght] to be addressed by the current invention," the recited sheath must be connected to the bag or luggage permanently.  *See AK Steel*, 344 F.3d at 1239-40 (claims should be interpreted consistent with stated purposes and goals of the invention).  This is further confirmed by the Examiner's own notes in the lead up to the allowance of the claims.  The Examiner, when summarizing the resulting interview, noted that "[t]he sheath and USB connector are **rigidly** attached to the exterior surface of the bag."  Exh. A at 07/05/2019 Interview Summary at 1 (File History at 127).  This was sufficient to overcome the rejection based on Ferber (*id.*) and result in a Notice of Allowance.  *See id.* at 10/02/2019 Notice of Allowance (File History at 81).  To be rigidly attached is to be held permanently, and is consistent with permanent connection.

### G.  "At The Body Opening"

| Claim Term, Clause, or Phrase | U.S. 10,572,071 Claim(s) | U.S. 10,931,138 Claim(s) | Proposed Construction |
|---|---|---|---|
| "at the body opening" | | 23 | § 112 – Lack of Written Description; Indefinite |

Claim 23 of the '138 Patent recites a "sheath at the body opening."  '138 Patent at Claim 23.  The '138 specification recites "a body opening between the inner surface and the outer surface

. . ..." '138 Patent at 8:34-36.  However, the recited "body opening" is **not** described in the '071 Patent specification at all.  Instead, the "body opening" was added as new matter to the application that resulted in the '138 Patent.

"[T]he test [for written description] requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Vasudevan*, 782 F.3d at 682 (citing *Ariad*, 598 F.3d at 1351).  Because the parent application of the '138 Patent does not contain "a body opening" within the four corners of the specification, the '138 Patent lacks written description of this term unless it is accorded the filing date of the continuation-in-part.  That is, the parent application of the '138 Patent does not provide any disclosure of placing a sheath at the body opening, and therefore would not "reasonably convey to those skilled in the art that the inventor had possession of the claim subject matter as of the filing date." *Id.*  Accordingly, if the '138 Patent is afforded the priority date of its parent application, "at the body opening" is invalid for lack of written description.

Additionally and alternatively, regardless of the priority date, "at the body opening" is indefinite.  *See* 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.").  "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).  A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).

But a person skilled in the art reading the '138 Patent would not be informed about what it means to be "at the body opening" of a bag.  Although the '138 Patent describes what the body

14

opening is, it provides no guidance as to what it means to be "*at* the body opening."  Accordingly,

one of skill in the art would not know whether and how to design the sheath on a bag or luggage

in order to be "*at* the body opening."  *See id.* at 911 (whether a claim is indefinite is determined

from the perspective of one of ordinary skill in the art as of the time the application was filed).

Does this mean that the sheath must be in physical contact with the body opening?  Within a

predetermined distance from the body opening?  If so, from where on the body opening is the

distance measured?  Because "at the body opening" leaves more questions asked than answer, the

specification does not particularly point out the claimed subject matter, a person of skill in the art

would not know what the invention was, and Claim 23 of the '138 Patent is indefinite.

### H.     "Retained In"

| Claim Term, Clause, or Phrase | U.S. 10,572,071 Claim(s) | U.S. 10,931,138 Claim(s) | Proposed Construction |
|---|---|---|---|
| "retained in" | | 23 | § 112—Lack of Written Description, Indefinite<br>Alternatively, held in permanent attachment. |

Claim 23 of the '138 Patent recites that "the operative end of the female end of the USB

cable is **retained in** the USB opening to provide the female end of the U[SB] cable in a flat

position."  '138 Patent at Claim 23.

The '071 Patent does not ever recite "retained in."  However, the '138 Patent recites—in

newly added portions of the specification—the following:

> As depicted in Fig. 44, the operative end (430) of the female end of
> the USB cable is **retained in** the second open end (4400) of the
> sheath and the cord end of the female end of the USB cable is
> **retained in** the first closed end (4410) of the sheath to provide the
> female end of the U[SB] cable in a flat position with the operative
> end (4300) of the female connector being uncovered and above the
> outer surface of the body . . .

'138 Patent at 7:63-67 (emphasis added).

Figure 44, which is included in the '138 Patent but not the '071 Patent, shows:



Fig. 44

'138 Patent at Figure 44.

Once again, and for similar reasons as explained above, this term—"retained in"—the '138 Patent lacks written description of this term unless it is accorded the filing date of the continuation-in-part.  That is, the parent application of the '138 Patent does not provide any disclosure of "the operative end of the female end of the USB cable [being] **retained in** the USB opening . . .."  '138 Patent at Claim 23.  Therefore, the parent application would not "reasonably convey to those skilled in the art that the inventor had possession of the claim subject matter as of the filing date." *Vasudevan*, 782 F.3d at 682 (citing *Ariad*, 598 F.3d at 1351); *see also Waldemar*,

32 F.3d 558-59 (citing *In re Rasmussen*, 650 F.2d 1212, 1215 (CCPA 1981)) (to be definite, "one skilled in the art, reading the original specification, would immediately discern the limitation at issue in the parent."). Accordingly, if the '138 Patent is afforded the priority date of its parent application, "retained in" is invalid for lack of written description.

Alternatively, "retained in" should be construed to mean "held in permanent attachment." The '138 Patent specification recites that "the female end of the USB cable is retained in the USB opening to provide the female end of the U[SB] cable in a flat position." *See* '138 Patent at Claim 23; *see also id.* at 7:63-67. The female end of the USB cable is held flat in order to "provide[] a sturdy position for the external USB cable to connect to." *Id.* at 2:24-26. "In this way, a user may, with one hand attach an external USB cable." *Id.* at 2:26-28. Accordingly, one of the purposes of retaining the female end of the USB cable in the USB opening is to "provide[] a sturdy position" in which the USB cable cannot move, even when a user only has the steadiness and precision of one hand to attach the USB cable. *See id.* Thus, the female end of the USB cable must be held in permanent attachment in the USB opening in order to accomplish the purpose of the invention. *See AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1239-40 (Fed. Cir. 2003) (claims should be interpreted consistent with stated purposes and goals of the invention).

## V.   CONCLUSION

For the foregoing reasons, Wenger respectfully requests that the Court issue the below claim constructions for the '071 and '138 Patents.

| Claim Term, Clause, or Phrase | U.S. 10,572,071 Claim(s) | U.S. 10,931,138 Claim(s) | Proposed Construction |
|---|---|---|---|
| "retained outside" | 1, 10 | | § 112(b)<br>Alternatively, retained entirely outside of. |
| "adjacent to" | 1, 10 | | § 112(b)<br>Alternatively, adjoining. |

17

| "in communication with" | 1, 10 | 23 | Alternatively, attached to. |
|---|---|---|---|
| "covers" | 1, 10 | | § 112(b)<br>Alternatively, overlapping; on top of. |
| "exposed" | 1, 10 | | not fully covered |
| "fixedly attached" | 1, 10 | | Alternatively, connected to the bag or luggage permanently. |
| "at the body opening" | | 23 | § 112(a), (b)<br>Alternatively, adjoining a cutout in the body where the inner surface of the bag or luggage and the outer surface of the bag or luggage meet. |
| "retained in" | | 23 | § 112(a), (b)<br>Alternatively, held in permanent or semi-permanent attachment. |

Dated: March 10, 2022

_/s/ Taylor N. Mauze_

Taylor N. Mauze (TX Bar No. 24102161)
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
7500 Rialto Boulevard, Suite 250
Austin, Texas 78735
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Christine E. Lehman (_pro hac vice_)
clehman@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
1710 Rhode Island Avenue, NW, 12th Floor
Washington, DC 20036
Tel: (202) 894-7311

**_Attorneys for Defendant Wenger, S.A._**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing instrument has been served to all counsel of record by electronic mail on March 10, 2022.

*/s/ Taylor N. Mauze*