UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| WENGER S.A.<br><br>Plaintiff,<br><br>-against-<br><br>GALAXY BRANDS LLC and<br>OLIVET INTERNATIONAL, INC.,<br><br>Defendant(s). | Case No. 1:20-cv-01107-LGS |

**PLAINTIFF WENGER S.A.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS COMBINED MOTION FOR PRELIMINARY INJUNCITON
AGAINST OLIVET INTERNATIONAL, INC., AND FOR LIFT OF STAY OF CASE**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   INTRODUCTION .......................................................................................................... 2
II.  STATEMENT OF FACTS ............................................................................................. 2
III. ARGUMENT .................................................................................................................. 5
     A.   PRELIMINARY INJUNCTION ........................................................................ 5
          a.   Legal Standard ........................................................................................ 5
          b.   Wenger Is Likely To Succeed On The Merits Of Its Trademark
               Infringement And Dilution Claims against Olivet ............................................ 5
          c.   Wenger Will Suffer Irreparable Injury If The Injunctive Relief Sought Is
               Not Granted ............................................................................................. 8
          d.   Wenger's hardship greatly outweighs Galaxy's hardship if enjoined from
               selling infringing products ....................................................................... 9
          e.   The Injunction Will Not Disserve The Public Interest ........................... 9
     B.   LIFT OF STAY ................................................................................................. 10
     C.   ESCROW ACCOUNT ...................................................................................... 11
IV.  CONCLUSION ............................................................................................................. 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*CAE Indus. Ltd. v. Aerospace Holdings Co.*,
   116 B.R. 31(S.D.N.Y. 1990) ............................................................................................... 10

*Citigroup Glob. Markets, Inc. v. Mun. Elec. Auth. of Georgia*,
   No. 14 CIV. 2903 AKH, 2014 WL 3858509 (S.D.N.Y. June 18, 2014) ............................... 5

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir.2009) .................................................................................................. 8

*Juicy Couture, Inc. v. Bella Int'l Ltd.*,
   930 F. Supp. 2d 489 (S.D.N.Y. 2013) ......................................................................... 6, 7, 9

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
   192 F.3d 337 (2d Cir. 1999) ................................................................................................. 5

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*,
   No. 13 CIV. 4650 JFK, 2014 WL 4783008 (S.D.N.Y. Sept. 25, 2014) .............................. 10

*N. Face Apparel Corp. v. TC Fashions, Inc.*,
   No. 05 CIV. 9083 (RMB), 2006 WL 838993 (S.D.N.Y. Mar. 30, 2006) .............................. 8

*Philips Bryant Park LLC v. HFZ Cap. Grp. LLC*,
   No. 15 CIV. 2972, 2015 WL 13912298 (S.D.N.Y. Apr. 30, 2015) ....................................... 5

*Polaroid Corp. v. Polarad Electronics Corp.*,
   287 F.2d 492 (2d Cir.) *cert. denied,* 368 U.S. 820 (1961) ................................................... 6

*ProFitness Phys. Therapy Ctr. v. Pro–Fit Ortho. and Sports Phys. Therapy P.C.*,
   314 F.3d 62 (2d Cir.2002) .................................................................................................... 9

*Red Earth LLC v. United States*,
   657 F.3d 138 (2d Cir.2011) .................................................................................................. 5

*Reebok Int'l Ltd. v. Sung Hwa Int'l Corp.*,
   No. 87 CIV. 7015 (JFK), 1987 WL 27684 (S.D.N.Y. Dec. 10, 1987) .............................. 8, 9

*Thompson Med. Co., Inc. v. Pfizer Inc.*,
   753 F.2d 208 (2d Cir.1985) .................................................................................................. 6

*Uto v. Job Site Servs., Inc.*,
   444 B.R. 222 (E.D.N.Y. 2011) ........................................................................................... 10

**Statutes**

11 U.S.C. §§ 101-1532 ................................................................................................................. 4

11 U.S.C. § 362(a)(1).................................................................................................................. 10

Bankruptcy Code Section 362....................................................................................................... 4

Lanham Act ................................................................................................................................... 9

# I.
# INTRODUCTION

Plaintiff Wenger S.A. ("Wenger") respectfully submits this memorandum of law in support of its motion for lifting of the stay and for a preliminary injunction against defendant Olivet International, Inc. ("Olivet"), enjoining Olivet from infringement and dilution of its Wenger Emblem and SWISSGEAR marks.

# II.
# STATEMENT OF FACTS

This is a trademark infringement and trademark dilution lawsuit brought by Wenger against Galaxy Brands LLC ("Galaxy") and Olivet for infringement of Wenger's valuable trademarks.

At least as early as 1971, Plaintiff adopted the distinctive logo of a cross on a curvilinear square with rounded corners, outlined by another curvilinear square with rounded corners



(hereinafter, the "Wenger Emblem"), shown below which is duly registered in the United States Patent and Trademark Office. See Complaint, at paras, 9—11 (ECF #1).

At least as early as 2003, Wenger adopted the mark SWISSGEAR for use with travel gear, business gear, outdoor gear, and recreational and other products in the U.S. Classes 9, 11, 16, 18, 20, 22, 25, and 28. *See* Exhibit B to Complaint (ECF #1).

Plaintiff is owner of copyright rights associated with an original work of authorship encompassing the Wenger Emblem, as seen below:



In 2015, Galaxy applied for various trademark registrations of marks highly similar to the Wenger Emblem and Wenger's SWISSGEAR mark (collectively "Wenger marks") – long after those marks were first used, registered and became famous. The United States Patent and Trademark Office has granted registration of the following logo ("Galaxy Cross"), during prosecution of which Defendants submitted specimens showing use of the logo in combination with SWISSTECH, demonstrating defendant GALAXY's bad faith. *See* Complaint, at para. 19 (ECF#1).

| **Mark** | **Reg. No.** | **Goods** |
|---|---|---|
|  | 3,769,824 | *Backpacks; Carry-all bags; Drawstring bags; Duffel bags; Sports bags; Umbrellas; All-purpose athletic bags,* in Class 18; *Water bottles sold empty,* Class 21; *Tents,* Class 22. |

The brand SWISSTECH was developed for luggage and backpacks to be sold at Walmart Inc. ("Walmart") stores and through Walmart's website in direct competition with Wenger's SWISSGEAR products bearing the Wenger Emblem. Olivet is the manufacturer of the infringing goods and has been contributing them since 2019.

Sales of the SWISSTECH products ("infringing goods") have generated millions of dollars in revenue for Walmart and Olivet since launch of the brand in early 2019. *See* Pulichino

3

Declaration, at para. 4, and **Exhibit B** thereto.[1] Galaxy received royalty payments in the amount of USD 705,437.07. *Id*. at para. 2, and **Exhibit B** thereto. Sales are continuing to this day.

On August 31, 2021, Galaxy filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532. On September 14, 2021, Galaxy filed with this Court a Notice of Commencement of Chapter 11 Cases (ECF #85), invoking the automatic stay of this action with respect to Galaxy pursuant to Section 362 of the Bankruptcy Code ("Section 362"). Olivet moved for a stay of this litigation on September 17, 2021 (ECF #87). On October 1, 2021, this Court stayed the litigation against Olivet.

Since that time, it appears that Olivet, which has no corporate relation to Galaxy, as has had no effects from Galaxy's bankruptcy, continues to sell tens of millions of dollars of luggage bearing the trademarks and copyrights of Wenger with no obstruction in sight. *See* Declaration of John Pulichino in Support of Wenger S.A.'s Motion for Preliminary Injunction and Lift of Stay, Executive Chairman of Group III Ltd., the exclusive licensee of Plaintiff Wenger ("Pulichino Declaration"), at paras. 3, 4, 6, 7, and **Exhibit A** thereto; *also see* Declaration of Maxim H. Waldbaum in Support of Wenger S.A.'s Motion for Preliminary Injunction ("Waldbaum Declaration"), at para. 4. Olivet is selling directly in competition with at least three luggage products controlled by Wenger or its parent, Victorinox AG. *Id*.

---

[1] More specifically, the overall Walmart sales of the infringing goods from April 2019 to April 2020 amount to a total of USD 28,217,663.2. Olivet's sales number indicate a total of USD 42,129,447.3 from 2019 to July 2021.

4

## III.
## ARGUMENT

A.  **PRELIMINARY INJUNCTION**

    a.  **Legal Standard**

A court considering a motion for a preliminary injunction must consider three factors: "(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction." *Red Earth LLC v. United States,* 657 F.3d 138, 143 (2d Cir.2011).

"The party seeking the injunction must demonstrate 'by a clear showing' that the necessary elements are satisfied." *Citigroup Glob. Markets, Inc. v. Mun. Elec. Auth. of Georgia*, No. 14 CIV. 2903 AKH, 2014 WL 3858509, at *2 (S.D.N.Y. June 18, 2014).

Applying these standards, Wenger is clearly entitled to preliminary injunctive relief.

    b.  **Wenger Is Likely To Succeed On The Merits Of Its Trademark Infringement And Dilution Claims against Olivet**

To establish a likelihood of success on the merits of its trademark infringement claims, the plaintiff must show that "(1) it has a valid, protectable trademark, and (2) defendants' use of a similar mark is likely to cause consumer confusion as to the origin of the product or services at issue." *Philips Bryant Park LLC v. HFZ Cap. Grp. LLC,* No. 15 CIV. 2972, 2015 WL 13912298, at *2 (S.D.N.Y. Apr. 30, 2015), citing *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999). A determination of the likelihood of confusion involves analysis of several factors. These include the strength of the plaintiff's trademark, the similarities between the products, the sophistication of the likely consumers, the degree of similarities between the

5

plaintiff's and defendant's marks, evidence of actual confusion and the defendant's good or bad faith. *See Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.) *cert. denied,* 368 U.S. 820 (1961).

Here, consumer confusion is likely given (1) the strength of Wenger's marks; (2) the similarity of the goods on which plaintiff's and defendants' marks are used; (3) the similarity of the marks; (4) the ample evidence of actual consumer confusion; and (5) defendants' bad faith.

Wenger's marks have acquired distinctiveness and should be afforded significant protection. "In determining whether a mark has acquired distinctiveness, courts consider a number of non-exhaustive factors: (1) advertising expenditures; (2) sales success; (3) unsolicited media coverage of the product; (4) attempts to plagiarize the mark; (5) the length and exclusivity of the mark's use; and (6) consumer studies linking the name to the source." *See Thompson Med. Co., Inc. v. Pfizer Inc.,* 753 F.2d 208, 217 (2d Cir.1985).

Here, Plaintiff has expended considerable effort and expense in promoting its Wenger Emblem marks and its SWISSGEAR marks, in combination and alone, and goods sold thereunder, with the result that the purchasing public has come to know, rely upon, and recognize Wenger Emblem and SWISSGEAR, individually or in tandem, as indicators of a single source of origin and symbol of quality for the goods sold by Plaintiff and its authorized licensees under these trademarks. *See* Complaint at paras. 16—18 (ECF #1); and Pulichino Declaration, at paras. 2—5. For many years, Wenger has expended millions of dollars annually in advertising, promoting and marketing Wenger Emblem and SWISSGEAR throughout the United States and the world, through such varied media as the Internet and point-of-sale displays. *Id*. As a result, Wenger has developed substantial and valuable goodwill in the trademarks SWISSGEAR and Wenger Emblem. All of this indicates the great strength of the Wenger marks. *See Juicy Couture, Inc. v.*

6

*Bella Int'l Ltd.,* 930 F. Supp. 2d 489, 500 (S.D.N.Y. 2013) ("Plaintiff has demonstrated that these marks have acquired distinctiveness. … Plaintiff has spent 'hundreds of millions of dollars on advertising and promoting goods and services offered in connection with the Juicy Marks' and Juicy products generated over $1.5 billion in sales from 2009 through 2011 alone.").

Moreover, the SWISSTECH mark is a direct imitation of SWISSGEAR and the Wenger Emblem both in name and design and is being used on identical goods (i.e., luggage and backpacks). *Id.* (finding that "Defendants' marks, JUICY GIRL, JUICYLICIOUS and JG [were] similar, if not identical (i.e., Juicy Girl), to [plaintiff's mark Juicy Couture]."). In fact, discovery has revealed that Defendants intentionally developed SWISSTECH as a more affordable version of SWISSGEAR that was meant to emulate SWISSGEAR. *See* Waldbaum Declaration, at para. 6, and **Exhibits A and B** thereto. This clearly shows bad faith.

Above that, there are numerous emails from confused customers reaching out to Wenger's customer care for warranty claims regarding their SWISSTECH luggage thinking that Wenger, or respectively Group III, Wenger's exclusive licensee, was the source of their products. *See* Pulichino Declaration, at para. 3, and **Exhibit C** thereto. This shows not only the inferior quality of Defendants' goods which affects the value of Wenger's products, but it also demonstrates actual customer confusion. *Id*.

Actual likelihood of confusion is also shown by expert preliminary results that are revealed in a substantial consumer survey draft prepared by Plaintiff's experts at Applied Market Science, a leader in the field ("AMS Report"). *See* Pulichino Declaration, at para. 2, and **Exhibit A** thereto. The AMS Report reads in pertinent part: "Based on the results of the surveys I conducted, it is my opinion, to a reasonable degree of professional certainty that relevant consumers are likely to confuse Galaxy's SWISSTECH backpacks with Wenger due to the use of the Galaxy Cross Logo."

7

At page 3.

All of this is clear evidence of likelihood of confusion and shows that Wenger will likely succeed on the merits. *See Reebok Int'l Ltd. v. Sung Hwa Int'l Corp.,* No. 87 CIV. 7015 (JFK), 1987 WL 27684, at *2 (S.D.N.Y. Dec. 10, 1987) (granting a preliminary injunction against defendant, stating: "Analysis of the factors and the applicable law dictate that a preliminary injunction be issued regarding the 'stripecheck' design on plaintiffs' products. The REEBOK 'stripecheck' is well-known and somewhat distinctive, despite the limited number of geometric designs one can place on the side of a sneaker. The products are identical, although the REEBOK brand is apparently a higher quality and, hence, sells for a higher price. The marks are virtually identical, and when the names on the sneakers were covered, the Court had difficulty ascertaining which shoe was made by whom. Indeed, the defendants have been aware of their behavior. Jimmy Kim, a defendant who works for Sung Hwa International Corporation, told a private investigator posing as a potential buyer, that Sung Hwa's shoes were copied from REEBOK sneakers.").

### c. Wenger Will Suffer Irreparable Injury If The Injunctive Relief Sought Is Not Granted

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir.2009) (internal quotations omitted). "In trademark disputes, a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm." *N. Face Apparel Corp. v. TC Fashions, Inc.,* No. 05 CIV. 9083 (RMB), 2006 WL 838993, at *2 (S.D.N.Y. Mar. 30, 2006). Wenger has established that a likelihood of confusion exists. Therefore, it has also made a showing that it would suffer irreparable harm if Olivet would be

8

allowed to continue selling infringing products. *See Reebok Int'l Ltd.*, 1987 WL 27684, at *2 ("Because plaintiffs have shown a probability of success on their Lanham Act claim, the Court presumes irreparable injury. Therefore, extraordinary relief is warranted.").

Further, as already laid out in Wenger's letter to the court on November 9, 2021, Olivet continues to make infringing sales on the Walmart internet site in the millions of dollars. *See* ECF #93. This shows irreparable harm. *See* Pulichino Declaration, at paras. 3—7, and **Exhibit C** thereto. The volume of infringing sales by Olivet is also set forth in the sales data Olivet has produced during discovery and amounts to a total of over $42 Million from 2019 to July 2021. *See* Pulichino Declaration, at 4, and **Exhibit B** thereto.

### d. Wenger's hardship greatly outweighs Galaxy's hardship if enjoined from selling infringing products

Given the great likelihood of success on the merits, this prong is not required for issuance of a preliminary injunction against Olivet. But even if considered, the balance of hardship tips in favor of Wenger since Wenger faces potential loss of sales, goodwill and control over its reputation should Olivet be allowed to continue selling SWISSTECH products. *Juicy Couture, Inc.,* 930 F. Supp. 2d 489, 504.

### e. The Injunction Will Not Disserve The Public Interest

"The Second Circuit has long held that there is a 'strong interest in preventing public confusion.' *ProFitness Phys. Therapy Ctr. v. Pro–Fit Ortho. and Sports Phys. Therapy P.C.,* 314 F.3d 62, 68 (2d Cir.2002). Since Wenger has clearly established that Defendants' actions are likely to cause consumer confusion, "the public interest would not be disserved by the issuance of a preliminary injunction." *Juicy Couture, Inc.,* 930 F. Supp. 2d 489, 505.

B.     LIFT OF STAY

The court should grant Wenger's Motion to lift the stay against Olivet. "It is well-established that stays pursuant to 11 U.S.C. § 362(a)(1) are limited to debtors and do not encompass non-bankrupt co-defendants." *Uto v. Job Site Servs., Inc.,* 444 B.R. 222, 224 (E.D.N.Y. 2011). "[T]he automatic stay can be extended to non-debtors only where there exist unusual circumstances which would require something more than the mere fact that one of the parties to the lawsuit has filed bankruptcy." *Id*. Such circumstances are typically found "only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples delineated by the Second Circuit include: (1) a claim to establish an obligation of which the debtor is a guarantor; (2) a claim against the debtor's insurer; and (3) actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *Id*. (internal quotations omitted). It is "[t]he movant [who] bears the burden of demonstrating the need for such a stay. *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC,* No. 13 CIV. 4650 JFK, 2014 WL 4783008, at *3 (S.D.N.Y. Sept. 25, 2014). By contrast, a stay should not be extended if it "would work a hardship on plaintiffs, by giving an unwarranted immunity from suit to solvent codefendants." *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC,* No. 13 CIV. 4650 JFK, 2014 WL 4783008, at 2 (S.D.N.Y. Sept. 25, 2014), citing *CAE Indus. Ltd. v. Aerospace Holdings Co*., 116 B.R. 31, 32(S.D.N.Y. 1990).

Here, Wenger is suffering hardship as a direct result of the stay, given the continuing sale of infringing goods by Olivet through the Walmart website. *See* Pulichino Declaration, at paras. 3-7, and **Exhibit D** thereto; *also see* Waldbaum Declaration, at para. 4. These sales appear vibrant to the point that they now include direct infringement to exactly the same competitors Wenger, Victorinox, and Wenger's exclusive licensee for the United States. *See* Pulichino

10

Declaration, at paras. 2-4. It further appears that Olivet is taking advantage not only of Plaintiff but also of consumers by willfully selling such luggage at prices that have substantially increased. *Id.*, at para. 6. If Olivet follows the pattern set by Galaxy, after Christmas they too might become a gray ghost and leave the market with their full revenue stream.

There can be no greater hardship than letting a free reign exist for a willful intellectual property infringer with no ability to demand accountability.

**C.**     **ESCROW ACCOUNT**

Should this court find that neither a lift of stay nor issuance of a preliminary injunction is warranted, Wenger respectfully asks the court to use its inherent authority to set up an escrow account and to order that all revenue deriving from the sale of infringing goods by Olivet be deposited into the account pending the outcome of this litigation. *See* Pulichino Declaration, at para. 7; also see Waldbaum Declaration, at para. 5.

**IV.**
**CONCLUSION**

For the foregoing reasons, Wenger respectfully requests this court to (1) issue a preliminary injunction against Olivet, enjoining Olivet from continuing to sell the infringing products; and (2) lift the stay with regard to Olivet and allow for the proceedings to continue. In the alternative, Wenger asks this court to create an escrow account for all revenue deriving from the sale by Olivet of the infringing products.

Dated:  New York New York
        November 17, 2021

                                        RIMON, P.C.

                                        By:    */s/ Maxim H. Waldbaum*
                                               Maxim H. Waldbaum

11

100 Park Avenue, 16th Fl.
New York, NY  10017
P: (917) 603-3905
F: (212) 363-0270

*Attorney for Plaintiff*
*Wenger S.A.*

12