AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

SWISSDIGITAL USA CO., LTD.,
*Plaintiff*
v.
WENGER S.A.
*Defendant*

)
)
)
) Civil Action No. 6:21-cv-453
)
)
)

DATE 11/22/22
TIME: 12:50 AM/PM
INITIALS:
PS # 324

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Group III International, Inc. c/o Scott Smiley
Concept Law Group
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See attachment B.

| Place: Concept Law Group<br>6400 North Andrews Avenue<br>Suite 500, Fort Lauderdale, Florida 33309 | Date and Time:<br>December 9, 2022 |
|---|---|

The deposition will be recorded by this method: Videography, Stenography

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attachment A.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/18/2022

*CLERK OF COURT*

OR

s Dariush Keyhani

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* SWISSDIGITAL USA, CO., LTD. _____, who issues or requests this subpoena, are:
Dariush Keyhani, Keyhani LLC, 1050 30th Street NW, Washington, DC 20007, dkeyhani@keyhanillc.com, (202) 903-0326.

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 6:21-cv-453

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

    I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

    ☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0   .

    I declare under penalty of perjury that this information is true.

Date: _____

                                                                   *Server's signature*

                                                                   *Printed name and title*

                                                                   *Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# DEFINITIONS AND INSTRUCTIONS TO ATTACHMENTS A AND B

## DEFINITIONS

The words and phrases used in these Requests shall have the broadest possible meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Western District of Texas. All definitions and rules of construction incorporate the obligations set forth in Local Court Rule CV-26 and in Federal Rule of Civil Procedure 34.

In addition, the following terms shall have the meanings set forth below:

1. The terms "You", "Your", or "Group III", shall refer to Group III International Inc., as well as its parents, affiliates and related entities, subsidiaries, divisions, branches, predecessors, or successors-in-interest, past or present, and all past or present agents, employees, officers, members, managers, directors, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing or purporting to act on behalf of the foregoing who are subject to the direction and/or control of Group III.

2. The terms "Wenger", "Wenger S.A.", "Wenger Licensing S.A." or "Defendant" shall refer to Wenger S.A. as well as its parents, affiliates and related entities, subsidiaries, divisions, branches, predecessors, or successors-in-interest, past or present, and all past or present agents, employees, officers, members, managers, directors, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing or purporting to act on behalf of the foregoing who are subject to the direction and/or control of Defendant.

3. The term "Swissdigital" or "Plaintiff" shall refer to Swissdigital USA Co., Ltd.

4. The term "Third Party" means a Person other than Group III, Wenger S.A., or Swissdigital.

1

5. As used herein, the term "Defendant's Trademarks" means all trademarks registered to Wenger, including but not limited to its Wenger Emblem marks and SWISSGEAR marks.

6. "The '071 patent" refers to U.S. Patent No. 10,574,071.

7. "The '138 patent" refers to U.S. Patent No. 10,931,138.

8. "Patents-in-Suit" or "Asserted Patents" collectively refers to the '071 patent and the '138 patent.

9. "The '104 application" refers to U.S. Patent Application No. 14/836,104.

10. "The '059 application" refers to U.S. Patent Application No. 16/838,059.

11. The term "this Action", "this Matter", "this Case", or "this Lawsuit" shall refer to the case *Swissdigital USA Co., Ltd. v. Wenger S.A.*, Civil Action No. 6:21-cv-00453-ADA, pending in the United States District Court for the Western District of Texas.

12. As used herein, the term "Accused Product(s)" means all products backpacks, bags, or luggage that includes a USB port including but not limited to backpacks, bags, or luggage appearing on the www.swissgear.com website, or sold in the U.S. at any time by Wenger or Group III, described as having a "built-in USB outlet power ready port for charging on the go" and/or part of a "USB Power Ready Collection" including but not limited to products that Plaintiff accuses of infringement in this Action, including in Plaintiff's Complaint, Plaintiff's First Amended Complaint, Plaintiff's Preliminary Infringement Contentions, Plaintiff's Final Infringement Contentions, and exhibits attached thereto.

13. The term "infringe," and any conjugation thereof, shall be construed in accordance with the meaning given those terms in Title 35 of the United States Code, and the federal judiciary's

2

interpretations thereof, and shall be understood to refer to direct infringement, contributory infringement, inducement, literal infringement, and infringement under the doctrine of equivalents.

14. The term "Person" shall refer to any natural person in any capacity, and all entities of every description including, but not limited to, associations, organizations, companies, partnerships, businesses, joint ventures, corporations, trusts and estates, governmental units, and all divisions, departments, and other such units.

15. The terms "document" or "documents" shall be understood to have the broadest meanings of "documents or electronically stored information" under Rule 34 of the Federal Rules of Civil Procedure and the Federal Judiciary's interpretations thereof, whether printed, recorded, microfilmed, stored electronically or optically, reproduced by any process, written or produced by hand, typewritten, or recorded in any other way, and whether or not claimed to be privileged, confidential or personal. The term "document" includes but is not limited to electronically stored information ("ESI"), writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium whatsoever from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, as well as any tangible things. The term "document(s)" includes but is not limited to emails or messages (such as text, instant, direct, or other types of messages), social media or other online content, and content obtained from the internet of things ("IoT"), workplace collaboration tools, and ephemeral messaging applications. The term "document(s)" also includes all appendices, schedules, exhibits, and other attachments, as well as related and relevant metadata for all ESI, including but not limited to information about the document's author, creation date, revision dates, tracked changes, and electronic comments. A draft or nonidentical copy of a document is a separate document within the meaning of this term.

16. The terms "Any," "All," and "Every" mean each and every, and "Each" shall be construed to include and encompass "All."

17. Whenever the conjunctive is used, it shall also be taken in the disjunctive, and vice versa.

18. As used herein, words in the singular include the plural and words in the plural include the singular.

19. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all productions that might otherwise be construed to be outside of its scope.

20. All terms used herein that are capitalized, either initially or in their entireties, shall be construed as if they appeared in lower case letters, as may be necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside its scope.

21. The terms "concerning," "relate to," "related to," and "relating to" shall mean in whole or in part concerning, reflecting, alluding to, mentioning, regarding, discussing, bearing upon, commenting on, constituting, pertaining to, demonstrating, describing, depicting, directly or indirectly relating to, summarizing, containing, embodying, showing, comprising, evidencing, refuting, contradicting, analyzing, identifying, stating, dealing with, and/or supporting.

22. The term "Communication" means and Relates to any transmission, conveyance, or exchange of information (in the form of facts, ideas, inquiries or otherwise), whether by oral, written, printed, recorded, filmed, electronic, or other means.

23. The term "ESI" means and Relates to Electronically Stored Information as that term is used and defined in Rules 26 and 34 of the Federal Rules of Civil Procedure and the official notes and comments thereto.

4

24. The term "Thing" includes, but is not limited to, any tangible thing that is not a Document, including any product, model, machine, device, apparatus, tool, component part, assembly or subassembly, and any portion thereof.

25. The term "USB outlet power ready port" means a "USB outlet power ready port for charging on the go" and/or "USB power port" as described at https://www.swissgear.com/swissgear-5358-scansmart and/or any substantially similar feature.

26. The term "USB Power Ready Collection" means the line of products designated as part of the "USB Power Ready Collection" on the SWISSGEAR website at https://www.swissgear.com/ and or any bags, backpacks, or luggage including a "USB outlet power ready port" and/or containing any substantially similar feature.

27. All other words and phrases are to be given their ordinary meaning consistent with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Western District of Texas and shall not be unduly or restrictively construed so as to avoid responding to the fair scope of the requests.

## INSTRUCTIONS

1. These Requests shall be deemed to seek complete and current information as of the date that the answer is served and shall be read broadly pursuant to the full extent of the Federal Rules of Civil Procedure. Furthermore, these Requests are of a continuing nature, and You are required to serve supplemental responses if You or any of Your attorneys, agents, or representatives obtains further or different information after the date of Your initial responses.

2. With respect to the response to Each Request or subpart thereof, state the source of the information given therein with as much particularity as is reasonably possible, including, without limitation, the nature and designation of Any Documents that contain such information

5

and the identification of Each Person who provided Any information included in such answer. In addition, identify Each other Person known or believed to have some or All of the information sought in such Request or subpart thereof.

3. To the extent that the Requests require the identification of Documents, Identify All responsive Documents, wherever located, in the possession, custody or under the control of Group III, including Any Documents contained in Any personal files of present or past officers, managers, members, and employees of Group III. Copies of Documents that are not identical duplicates of the original Documents because of markings, handwritten notations or other differences are separate Documents for the purposes of identification and production. English translations or partial translations of foreign language Documents are also considered separate Documents for the purposes of identification and production.

4. In the event that an identified Document has been destroyed, or is alleged to have been destroyed, state the reason for its destruction, the name(s) of the Person(s) having Any knowledge of the circumstances of its destruction, and the name(s) of the Person(s) responsible for its destruction.

5. In the event that an identified Document is not in Your possession or custody or under Your control, state the name(s) of the Person(s) who has/have possession, custody or control of such Document. If such Document was formerly in Your possession or custody or under Your control, recount the circumstances of its disposition, state the reason for such disposition, Identify Any Person(s) having Any knowledge of or about such disposition, and Identify the Person(s) responsible for such disposition. If such document is in the possession or custody of Defendant please state that.

6

6. If You withhold any document and/or information because You claim that it is protected by the work product doctrine, the attorney-client privilege, or any other privilege or protection, identify the document and/or information by description, date, author or source, a brief description of the nature and subject matter of the document and/or information in sufficient detail to permit other parties to this action to assess the applicability of the asserted privilege or immunity, and state the ground(s) on which You base Your claim of privilege or protection.

7. If You object to Any part of a Request and refuse to answer that part, state Your objection, but answer the remaining portion of that Request. If You object to the scope or time period of a Request and refuse to answer for that scope or time period, state Your objection (including specifically why You believe the scope or time period is impermissible) and answer the Request for the scope or time period to which You do not object.

8. If You find the meaning of any term in these requests unclear, it shall assume a reasonable meaning, state what the assumed meaning is, and respond to the request according to the assumed meaning.

9. Do not leave the response to Any Request blank. If a Request is not applicable, specify why that Request does not apply. If the answer to a Request is "none," provide such indication rather than leave the space blank.

10. To the extent that a Request seeks annual data, supply such data on a calendar-year basis unless otherwise directed in the Request; if Any basis other than a calendar-year basis is used, such as to accommodate a fiscal-year basis, state as part of the response the nature and type of the basis so used.

11. If it is not possible to answer Any of the following Requests in full after exercising due diligence, provide such indication and answer to the extent possible, including whatever

7

information You have concerning the unanswered portion(s), and clearly Identify the portion(s) of the Request You are unable to answer.

12. If Any answer to a Request is qualified in Any way, set forth the details of such qualification.

## ATTACHMENT A – DOCUMENTS TO BE PRODUCED

1. A sample of each Accused Product including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

2. All product manuals, specifications, instructions, and any product documentation for each of the Accused Products including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

3. All product packaging, product tags, and instructions for each of the Accused Products including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

4. All documents and communications concerning the Accused Products.

5. All documents sufficient to identify the Accused Products including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

6. All documents and communications concerning the SWISSGEAR "USB Power Ready Collection."

7. All documents and communications concerning any USB port feature of SWISSGEAR products.

8. All documents and communications shared between You and Defendant or any of Group III or Defendant's customers concerning the Accused Products, the SWISSGEAR "USB Power Ready Collection," and/or any USB port feature of any SWISSGEAR backpack, bag, or luggage sold or offered for sale by You or Defendant.

9. All documents sufficient to evidence Your revenues, profits, costs, and total units sold for each of the Accused Products, including but not limited to any SWISSGEAR backpack,

9

bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port, on a monthly, quarterly, and/or however else these records are maintained in their ordinary course of business.

10. All documents sufficient to evidence royalties paid by or owed by Group III to Defendant in connection with the Accused Products including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

11. All documents and communications concerning the marketing, advertising, or promotion of the Accused Products.

12. All documents and communications concerning any actual or projected sales or market share of the Accused Products, including but not limited to sales strategies, market studies, market share reports, and competitive analyses.

13. All documents and communications concerning Swissdigital, Swissdigital's business, or Swissdigital's U.S. patents and/or patent applications, including but not limited to the Patents-in-Suit, the '104 application, and/or the '059 application.

14. All documents and communications shared between You and Defendant concerning the Accused Products, the Patents-in-Suit, the '104 application, the '059 application, and/or this Action.

15. All documents and communication concerning any licensing agreements for the use of Defendant's Trademarks with the Accused Products.

16. All documents and communications concerning any license considered, negotiated, or agreed to concerning the Accused Products.

10

17. All documents and communication concerning quality control of the Accused Products.

18. All documents and communications concerning or evidencing Defendant's control, supervision, or oversight of the Accused Products.

19. All documents and communications concerning the SWISSGEAR website at https://www.swissgear.com/.

11

## ATTACHMENT B – DEPOSITION TOPICS

1. The documents or things produced in response to the requests in Attachment B including authentication of such documents and things.

2. All intellectual property licensing agreements and related amendments with Wenger S.A. including but not limited to the licensing agreement with Wenger Licensing S.A. entered into on September 22, 2014 and any related communications.

3. Your compliance with the terms of all intellectual property licensing agreements and related amendments with Wenger S.A. including but not limited to the licensing agreement with Wenger Licensing S.A. entered into on September 22, 2014 and any related communications.

4. Group III's relationship with Wenger S.A.

5. Any licenses considered, negotiated, or agreed to concerning the Accused Products.

6. Any communications, oral or written, between You and any employee, officer, owner, consultant, or representative of Wenger S.A. relating to the Plaintiff, This Lawsuit, the Accused Products, the Patents-in-Suit, any other lawsuit involving the Patents-in-Suit, or the inventions claimed in the Patents-in-Suit.

7. Your Document and ESI retention, preservation, and/or destruction policies and practices.

8. Any retention or destruction of any Documents, ESI, or Things relevant or otherwise related to any issue in This Lawsuit.

9. Any communications, oral or written, between you and any Third Party relating to the Plaintiff, this Lawsuit, the Accused Products, the Patents-in-Suit, or the inventions claimed in the Patents-in-Suit.

10. Any study, analysis, investigation, or review of the Patents-in-Suit, Plaintiff's allegations of Defendant's infringement of the Patents-in-Suit, or the validity of the Patent-in-Suit.

12

11. The Accused Products including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

12. All product manuals, specifications, instructions, and any product documentation for each of the Accused Products including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

13. The design, development, manufacture, and sale of the Accused Products including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

14. The product packaging, product tags, and instructions for each of the Accused Products including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

15. The royalties paid by or owed by Group III to Defendant in connection with the Accused Products including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

16. The SWISSGEAR "USB Power Ready Collection".

17. Any USB port feature of SWISSGEAR products.

18. Your revenues, profits, costs, and total units sold for each of the Accused Products, including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

19. Identification of the Accused Products by name including but not limited to any SWISSGEAR backpack, bag, or luggage that includes a "USB outlet power ready port" or otherwise includes a USB port.

20. The marketing, advertising, or promotion of the Accused Products.

21. The actual or projected sales or market share of the Accused Products, including but not limited to sales strategies, market studies, market share reports, and competitive analyses.

22. Communications, written or oral, concerning any license considered, negotiated, or agreed to concerning the Accused Products.

23. Group III's awareness of the Patents-in-Suit.

24. When and how Group III first became aware of the Patents-in-Suit.

25. Group III's communications, written or oral, with Swissdigital.

26. The channels of commerce by which the Accused Products are sold.

27. Quality control of the Accused Products.

28. The SWISSGEAR website at https://swissgear.com

29. What inspired or influenced Group III in design of, or upon which Group III based the design of the Accused Products and/or any SWISSGEAR product featuring a USB port.

30. Any customer feedback relating to the Accused Products and/or the USB port feature.

31. The subject matter of the documents and things requested in Attachment B.

Dated: November 18, 2022

Respectfully Submitted,

/s/ *Dariush Keyhani*
Dariush Keyhani (*pro hac vice*)
Frances H. Stephenson (*pro hac vice*)
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

14

Jacqueline P. Altman
State Bar No. 24087010
John P. Palmer
State Bar No. 15430600
John A. "Andy" Powell
State Bar No. 24029775
USPTO Reg. No. 71,533
NAMAN HOWELL SMITH & LEE, PLLC
400 Austin Ave., Suite 800
Waco, Texas 76701
jaltman@namanhowell.com
palmer@namanhowell.com
powell@namanhowell.com

*Attorneys for Plaintiff Swissdigital USA Co., Ltd.*

15



---

## Check appears upside down intentionally
## How to use this check

Cut along this line 

**Need help?** Visit eChecks.com or call 877-333-6964

| Step 1<br>Print the check | Step 2<br>Validate it printed correctly | Step 3<br>Deposit like normal |
|---|---|---|
| ✓ Any printer works<br>✓ Black or color ink<br>✓ Basic white paper | ✓ **Correct if bank numbers are:**<br>Centered in white space<br>Parallel to edge of the page<br>Clearly printed in dark black ink<br>✗ **Reprint if bank numbers are:**<br>Cut off, skewed, or off-center<br>Smudged or wrinkled<br>Too light to read | 1. **Cut on the dotted line above**<br>2. **Endorse the back**<br>3. **Deposit like normal:**<br>In-person at a bank or credit union<br>Using an ATM<br>Via smartphone mobile deposit<br>With an office check scanner |

**Does your financial institution have questions about this check?**
- This check was printed from an authorized check record. It is not a Check 21 Image Replacement Document.
- To confirm this check was issued by the account holder and details (pay to, amount, routing/account number) remain unmodified, the item's authenticity can be verified using the Deluxe Inc. Check Verification service at https://echecks.com/verify.

**Questions?** Visit **eChecks.com** or call 877-333-6964

---

### For your records

**Issued date:** 2022-11-22
**Check number:** VV618
**From:** Gotcha Legal Services, Inc.
**Amount:** $40.00
**Payable to:** Group III International, …
**Delivery email:** None
**Memo:** witness fee 6 21 cv 453

Are you a business? To save time, money, and resources, make payments using Deluxe Payment Exchange. Call 877-333-6964 to get started today!

**deluxe.** PAYMENT EXCHANGE